UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| TERRY GEARIN, as Conservator for Patricia M. Gearin, | Case No. 10-CV-2227 (PJS/AJB) |
| Plaintiff, | |
| v. | ORDER |
| KEVIN RABBETT, in his individual capacity; STEVE HEINZ, in his individual capacity; RICHARD DOBLAR, in his individual capacity; ALAN KANTRUD, in his individual capacity; DAVID FISHER, in his individual capacity; and CITY OF MAPLEWOOD, | |
| Defendants. | |

---

Jill Clark, JILL CLARK, PA, for plaintiff.

Robin M. Wolpert, John M. Baker, Jenny Gassman-Pines, GREENE ESPEL, P.L.L.P., for defendants Kevin Rabbett, Steve Heinz, Richard Doblar, David Fisher, and City of Maplewood.

Leonard J. Schweich, Pierre N. Regnier, JARDINE, LOGAN & O'BRIEN, P.L.L.P., for defendant Alan Kantrud.

Patricia Gearin ("Gearin") brings this action through her conservator, plaintiff Terry Gearin, against defendants Kevin Rabbett, Steve Heinz, Richard Doblar, Alan Kantrud, David Fisher, and the City of Maplewood ("the City"). Gearin brings a host of constitutional and state-law claims, most arising out of an allegedly unlawful search of her business, an allegedly unlawful use of force against her during that search, and an allegedly unlawful criminal prosecution of her following that search.

This matter is before the Court on the motion of defendant Kantrud for judgment on the pleadings and the motion of defendants Rabbett, Heinz, Doblar, Fisher, and the City for partial

judgment on the pleadings.  For the reasons that follow, defendants' motions are granted in part and denied in part.

## I.  BACKGROUND

Except as otherwise noted, the following facts are taken from the allegations in Gearin's complaint:

Gearin is a resident of the City and a business owner.  In 2007, Gearin purchased a building and relocated her business to the City.  Since then, Gearin and the City have been embroiled in a bitter dispute over what Gearin must do to comply with the state building and fire codes.  At the heart of this dispute is the fact that Gearin wants to operate a large industrial grinder in her building, and the City has said that Gearin may not do so until she obtains a new Certificate of Occupancy ("COO").  This dispute has spawned a great deal of litigation in both state and federal court, including a separate lawsuit currently pending before the undersigned. *See Gearin ex rel. Gearin v. Maplewood*, No. 08-CV-5019 (PJS/AJB) (filed Aug. 25, 2008) (*Gearin I*).

In January 2008, Gearin was having problems with the grinder (which she was apparently operating without the City's knowledge).  She contacted Vecoplan, the grinder's manufacturer.  On January 9, Vecoplan sent two technicians to work on the grinder.  The technicians ran the grinder "hot" and left materials in the hopper, which caused those materials to catch fire during the night.  The next day (January 10), after extinguishing the fire, the City shut down Gearin's business and barred Gearin and her employees from entering the building.  At the same time, the City permitted the Vecoplan technicians to enter the building, where they painted the grinder to cover up burn marks.

About a month later, on February 12, City building official David Fisher attempted to inspect Gearin's building. Gearin refused to let Fisher in the building. Fisher then persuaded the City's fire marshal to issue Gearin a misdemeanor citation for two "certificate of occupancy" offenses. Three days later, on February 15, Fisher and defendant Alan Kantrud, an attorney acting on behalf of the City, applied for and obtained a search warrant for the building from a Ramsey County judge. Gearin alleges that the search-warrant application contained numerous false and misleading assertions and omissions.

Fisher executed the warrant, accompanied by a number of other people (including three police officers who are defendants in this case — Kevin Rabbett, Richard Doblar, and Steve Heinz). Doblar broke down the door of Gearin's building. Gearin told her employees, including her son, not to talk to the police. In retaliation, the police officers arrested Gearin. During the arrest, Gearin was pushed to the floor, cuffed, and physically manhandled in such a way that she suffered internal injuries, injuries to her right hand, and a broken tooth. Gearin was given a misdemeanor citation for another "certificate of occupancy" offense and for obstructing legal process.

Acting as the Maplewood city attorney, Kantrud prosecuted a criminal action against Gearin. After the state trial judge dismissed the "certificate of occupancy" violations for lack of probable cause, Kantrud filed an amended complaint that included four counts: one count of obstructing legal process, two counts of fifth-degree assault, and one count of disorderly conduct. *See State v. Gearin,* No. A09-0467, 2009 WL 3078581, at *2 (Minn. Ct. App. Sept. 29, 2009).

In March 2009, the state-court judge found that there was no probable cause for the February 15 search warrant because, in the affidavit supporting the warrant, Fisher had falsely asserted that no COO had ever been in place for the building. *Gearin*, 2009 WL 3078581, at *2-3. As a result, the judge suppressed evidence of building-code violations allegedly found during the search. *Id.* The judge also dismissed three of the four charges in the amended complaint (leaving only one of the two assault charges) for pleading defects unrelated to the suppression order or the propriety of the February 15 search. *Id.*

Kantrud appealed the suppression order and the dismissal of the obstructing-legal-process and assault charges. *Gearin*, 2009 WL 3078581, at *3. The Minnesota Court of Appeals declined to review the suppression order, holding that, because the order would not have a "critical impact" on the government's ability to prosecute the charges in the amended complaint, the court would not address the merits of Kantrud's appeal of the suppression order.[1] *Id.* at *4. But the court did reinstate the obstructing-legal-process and assault charges. *Id.* at *6. (Kantrud did not appeal the dismissal of the disorderly conduct charge. *Id.* at *3 n.1.) On October 12, 2009, shortly after the Minnesota Court of Appeals issued its decision, Kantrud voluntarily dismissed the entire case.

Gearin alleges that, during the prosecution, Kantrud worked together with the civil attorneys who represent the City in *Gearin I* (and who represent the City in this action). Among other things, Gearin alleges that the civil attorneys vetted and redacted documents before they were produced by Kantrud in the criminal case; that Kantrud prolonged the criminal case in

---

[1]To prevail on an appeal of a pretrial criminal order under Minnesota law, the government must "show that the order is erroneous and will critically impact the state's ability to prosecute the case." *Gearin*, 2009 WL 3078581, at *3.

order to delay resolution of *Gearin I* and cause Gearin's business to fail; that Kantrud's decision

to dismiss the criminal case was made in consultation with the civil attorneys representing the

City in *Gearin I*; and, in general, that Kantrud's actions in the criminal case were motivated by a

desire to help the City defend against Gearin's claims in *Gearin I*.

Gearin brings a total of seven claims. Five claims are brought against every defendant:

retaliation for Gearin's exercise of her First Amendment right to criticize the government;

retaliation for Gearin's exercise of her First Amendment right to access the courts; illegal search

and seizure under the Fourth Amendment; arrest without probable cause under the Fourth

Amendment; and excessive force under the Fourth Amendment. Two claims are brought against

Kantrud and the City only: a state-law claim for intentional infliction of emotional distress, and a

state-law claim for abuse of process.

The City, Fisher, and the three police officers (Rabbett, Doblar, and Heinz) move for

partial judgment on the pleadings on all claims except the claims for use of excessive force and

arrest without probable cause. Kantrud moves for judgment on the pleadings on all claims.[2]

## II. ANALYSIS

### A. *Standard of Review*

In reviewing a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), a court

applies the same standard used in reviewing a motion to dismiss for failure to state a claim under

---

[2]Although the complaint names Kantrud as a defendant on all of Gearin's constitutional claims, Gearin agreed at oral argument that Kantrud did not have anything to do with the amount of force used against her during the search. Hr'g Tr. 192, Sept. 22, 2010 [Docket No. 43]. The Court will therefore dismiss Gearin's excessive-force claim against Kantrud with prejudice. Similarly, although Gearin would not concede that Kantrud had nothing to do with her arrest, the complaint contains no allegations connecting Kantrud to Gearin's arrest. The Court will therefore dismiss Gearin's unlawful-arrest claim against Kantrud without prejudice.

Fed. R. Civ. P. 12(b)(6). *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Under this standard, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Id.* Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, the motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the court may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). In addition, the court may properly consider public records, including court records, on a motion to dismiss. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

### B. Prosecutorial Immunity

Defendants move for judgment on the pleadings on all claims against Kantrud — as well as on all claims against the City insofar as they relate to Kantrud's actions — on the basis of absolute prosecutorial immunity.

### 1. Section 1983 Claims Against Kantrud

A prosecutor is entitled to absolute immunity from civil liability under § 1983 for actions undertaken in his role as an advocate for the state in a criminal prosecution. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). At a minimum, such actions include the initiation and pursuit of a criminal prosecution and the presentation of the state's case at trial. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir.

1996). "Immunity is not defeated by allegations of malice, vindictiveness, or self-interest." *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 580 (8th Cir. 2006).

Prosecutorial immunity applies to acts, not people. "[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley*, 509 U.S. at 273. "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* Determining where to draw the line between functions that are immunized and functions that are not immunized can be difficult. *Imbler*, 424 U.S. at 431 n.33. A prosecutor seeking the protection of absolute immunity "bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

Gearin claims that Kantrud violated her constitutional rights by doing the following: (1) drafting, signing, and presenting to a judge the application for the February 15 search warrant, which application, Gearin says, contained false assertions and omitted critical facts; (2) pursuing criminal charges for "certificate of occupancy" violations after the statutory basis for those charges was repealed;[3] (3) communicating and working with the attorneys representing the City in *Gearin I*; (4) permitting one of his employees to submit an affidavit supporting the City's efforts to stay depositions in *Gearin I* until the resolution of the criminal case; (5) dragging out the criminal case by asking for continuances and pursuing an appeal, which

_____

[3]As discussed below, the Court agrees with defendants that, despite the repeal of Minn. Stat. § 16B.69, violations of the building code continued to be criminal offenses that could be prosecuted pursuant to Minn. Stat. § 326B.082, subd. 16. Even if this were not the case, however, Kantrud would clearly be immune from liability for continuing to pursue the "certificate of occupancy" offenses after the repeal of § 16B.69.

allegedly hampered Gearin's ability to pursue her claims in *Gearin I*; (6) accepting help from the *Gearin I* attorneys in the form of an amicus brief in the criminal appeal; and (7) in general, pursuing the criminal case to help the City defend against plaintiff's claims in *Gearin I* and to punish Gearin for exercising her First Amendment rights to criticize government officials and seek redress from the courts.

Nearly all of these acts are clearly core prosecutorial functions and thus are clearly shielded by absolute immunity. Indeed, setting aside Kantrud's actions with respect to the February 15 search warrant, the only act that was even arguably not a core prosecutorial function was Kantrud's decision to permit an employee to submit an affidavit supporting the City's motion to stay depositions in *Gearin I*. Although that action took place in the context of a civil case, the Court finds that it is nevertheless protected by absolute prosecutorial immunity. The affidavit was submitted in support of a motion for a stay of discovery in the civil action until the completion of the criminal action. Magistrate Judge Boylan granted the motion on the basis of case law recognizing that such stays are warranted to prevent civil discovery from becoming a "back door" method of obtaining otherwise-impermissible criminal discovery. *See Gearin I*, Docket No. 95 (order granting motion to stay deposition discovery). Thus, whatever Kantrud's subjective motives may have been in seeking to stay the civil depositions, he was acting pursuant to his role as an advocate for the City in the criminal proceeding. Kantrud is therefore entitled to absolute immunity on all of Gearin's § 1983 claims save her claims relating to the February 15 search warrant.

With respect to Gearin's claims relating to the February 15 search warrant: In *Burns v. Reed*, 500 U.S. 478 (1991), the Supreme Court held that a prosecutor was absolutely immune for

-8-

participating in a probable-cause hearing to obtain a search warrant.  *Id.* at 487.  But *Burns* is of little help here, for two reasons.

The first reason is that the Supreme Court was careful to limit its holding in *Burns* to the prosecutor's act of *appearing in court*:

> Initially, it is important to determine the precise claim that petitioner has made against respondent concerning respondent's role in the search warrant hearing. . . . [P]etitioner has challenged only respondent's participation in the hearing, and not his motivation in seeking the search warrant or his conduct outside of the courtroom relating to the warrant.

*Id.*  In this case, it is unclear whether Kantrud made any court appearance in connection with the search-warrant application.  Instead, Gearin appears mainly to be challenging Kantrud's decision to seek a warrant and his act of drafting and signing the application for that warrant.[4]  While *Burns* certainly does not foreclose the possibility that Kantrud could be immune for his out-of-court actions relating to the warrant, neither does it grant immunity for such actions.[5]

The second reason why *Burns* has limited application in this case is that the prosecutor in *Burns*, unlike the prosecutor in this case, did not seek a search warrant until *after* the suspect had

---

[4]Gearin has argued that, in signing the warrant application, Kantrud was acting as a witness and therefore is not entitled to prosecutorial immunity.  *See Kalina v. Fletcher*, 522 U.S. 118, 130-31 (1997) (holding that a prosecutor was not entitled to immunity where the prosecutor personally attested to the truth of the factual statements in an affidavit).  But the warrant application is clear on its face that Kantrud was not acting as a witness or personally attesting to the truth of any of the factual allegations in the application.  To the contrary, Kantrud's signature merely affirms that Kantrud, having been "duly apprised of the situation and of the information contained herein," supports and recommends the issuance of the warrant.  Gassman-Pines Aff. Ex. O.  In short, by signing the application, Kantrud made a legal request as a prosecutor, not a factual assertion as a witness.

[5]Notably, Justice Scalia authored a partial dissent in which he opined that a prosecutor's decision to seek a search warrant is not protected by absolute immunity.  *Burns*, 500 U.S. at 504 (Scalia, J., concurring in part and dissenting in part).

been arrested. *Burns*, 500 U.S. at 492 (noting that the issuance of the search warrant is "connected with the initiation and conduct of a prosecution, particularly where the hearing occurs after arrest, as was the case here"). In a later case, the Supreme Court said that a prosecutor does not act as an advocate, and hence is not entitled to absolute immunity, before there is probable cause to believe that the suspect has committed a crime:

> The prosecutors do not contend that they had probable cause to arrest petitioner or to initiate judicial proceedings during that period. Their mission at that time was entirely investigative in character. A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.

*Buckley*, 509 U.S. at 274.

Here, the connection between the search warrant and the criminal charges against Gearin is not clear. Gearin had been charged with misdemeanor "certificate of occupancy" violations a few days before Kantrud and Fisher applied for the search warrant, but defendants disclaim any connection between that citation and the later search warrant. Instead, defendants argue that the search warrant was merely a civil administrative warrant intended to permit Fisher to inspect for building-code violations, not a criminal warrant intended to permit Fisher to gather evidence for a criminal prosecution. Hr'g Tr. 233-34. If what defendants say is true, then the Court does not understand how Kantrud's applying for the warrant could be "intimately associated with the judicial phase of the *criminal* process," *Imbler*, 424 U.S. at 430 (emphasis added), or "connected with the initiation and conduct of a *prosecution*," *Burns*, 500 U.S. at 492 (emphasis added). *See Buckley*, 509 U.S. at 273 ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."); *Eden v. Voss*, 105 Fed. App'x. 234,

-10-

244-45 (10th Cir. 2004) (holding that government attorney who drafted and signed an application for an administrative search warrant was not absolutely immune for those activities because her conduct occurred before she had cause to initiate civil enforcement proceedings against the plaintiff); *KRL v. Moore*, 384 F.3d 1105, 1113 (9th Cir. 2004) ("approving a search warrant to assist with a collateral investigation into new crimes is an investigative function that is not entitled to absolute immunity").

The Court therefore grants Kantrud's motion for judgment on the pleadings and dismisses all of Gearin's § 1983 claims against him, with the exception of the claims that directly relate to Kantrud's actions in applying for the February 15 search warrant.

## 2.  State-Law Claims Against Kantrud

The Minnesota Supreme Court has provided immunity to prosecutors from state-law claims that is similar in scope to the immunity that prosecutors enjoy from federal-law claims: "We adopt the majority rule that public prosecutors, when acting within the scope of their duties by filing and maintaining criminal charges, are absolutely immune from civil liability." *Brown v. Dayton Hudson Corp.*, 314 N.W.2d 210, 214 (Minn. 1981); *see also S.J.S. by L.S. v. Faribault Cnty.*, 556 N.W.2d 563, 566 (Minn. Ct. App. 1996) (holding that a prosecutor was absolutely immune for turning over a victim's statement to the defense during plea negotiations for a charge involving a separate victim).

This Court has held that Kantrud is immune from liability for all of Gearin's § 1983 claims save the claims based on Kantrud's actions in applying for the February 15 search warrant.  Gearin's state-law claims against Kantrud arise from the facts that underlie her § 1983 claims with one important exception:  They do *not* encompass Kantrud's actions in applying for

the February 15 search warrant. *See* Compl. ¶ 50 (alleging intentional infliction of emotional

distress arising out of the "unfounded and intentionally protracted state criminal prosecution");

Compl. ¶ 53 (alleging that Kantrud is liable for abuse of process because he "used the state

criminal justice system process to accomplish a result not within the scope of the proceedings").

In short, Gearin's state-law claims are based entirely on conduct committed by Kantrud

"when acting within the scope of [his] duties by filing and maintaining criminal charges."

*Brown*, 314 N.W.2d at 214. The Court therefore grants Kantrud's motion for judgment on the

pleadings and dismisses all of Gearin's state-law claims against him.

### 3. Section 1983 Claims Against the City

The City first argues that, to the extent that Kantrud is protected by absolute immunity,

the City is also absolutely immune. But the Supreme Court has said several times, albeit in

dicta, that the immunities available to individuals under § 1983 do not extend to the

municipalities who employ those individuals. *See Leatherman v. Tarrant Cnty. Narc. Intel. &

Coord. Unit*, 507 U.S. 163, 166 (1993) ("These decisions make it quite clear that, unlike various

government officials, municipalities do not enjoy immunity from suit — either absolute or

qualified — under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("The only

immunities that can be claimed in an official-capacity action are forms of sovereign immunity

that the entity, *qua* entity, may possess, such as the Eleventh Amendment."). The Supreme

Court has also explicitly rejected the extension of qualified immunity to municipalities. *Owens

v. City of Independence*, 445 U.S. 622, 638 (1980) ("[T]here is no tradition of immunity for

municipal corporations, and neither history nor policy supports a construction of § 1983 that

would justify the qualified immunity accorded the city of Independence by the Court of Appeals.")

Relying on these decisions, several circuits have specifically held that absolute prosecutorial immunity does not extend to municipalities. *See Goldstein v. City of Long Beach*, No. 05-56243, 2006 WL 3206148, at *1-2 (9th Cir. Nov. 6, 2006) (rejecting county's claims of absolute prosecutorial immunity because government entities are "not entitled to rely vicariously upon immunity defenses afforded individuals in an § 1983 action");[6] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 467 (5th Cir. 1999) ("the district court erred in granting summary judgment for the District Attorney in his official capacity on the basis of his absolute prosecutorial immunity because that form of personal or individual immunity is not available in an official capacity suit"); *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1153 (2d Cir. 1995) ("Since 'municipalities do not enjoy immunity from suit — either absolute or qualified — under § 1983,' Pinaud's malicious prosecution claim against the County of Suffolk is not barred by prosecutorial immunity. " (quoting *Leatherman*)).

Although the Eighth Circuit does not appear to have addressed the question of whether a prosecutor's immunity from § 1983 claims extends to municipalities,[7] the Eighth Circuit has held that defendants who were functionally similar to prosecutors and judges did not enjoy absolute

---

[6]The Supreme Court later reversed a different panel of the Ninth Circuit on immunity issues involving the individual defendants. *See Van de Kamp v. Goldstein*, 129 S. Ct. 855 (2009).

[7]As discussed below, broad language in *Patterson v. Von Riesen*, 999 F.2d 1235 (8th Cir. 1993) could be read to suggest that municipalities are immune to the same extent as prosecutors. But the Court reads *Patterson* to apply only where a plaintiff seeks to hold a municipality liable under the theory articulated in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

immunity from claims brought against them in their official capacities. *See VanHorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007) (dismissing an appeal by the executive secretary and three appointed commissioners of a state racing commission because "this court's precedent, Supreme Court precedent, and case law from our sister circuits make clear that absolute, quasi-judicial immunity is not available for defendants sued in their official capacities").

There is thus substantial authority for the proposition that prosecutorial immunity does not extend to municipalities. The contrary decisions cited by the City — four district-court cases from the 1980s — are not persuasive. Notably, two of those four decisions are from New York federal district courts and thus were overruled by the Second Circuit's decision in *Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995). The Court therefore concludes that Kantrud's immunity does not extend to the City.

The City next argues that Gearin has failed to allege a proper basis for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Under *Monell*, the City cannot be liable under § 1983 for Kantrud's allegedly unlawful actions unless Gearin can show that the City caused those unlawful acts. *Id.* Specifically, Gearin must show either that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or that the alleged unconstitutional action was "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91.

Gearin alleges three bases for municipal liability under *Monell*: (1) that the City's *lack* of a policy prohibiting civil and criminal attorneys from cooperating with each other gives rise to

*Monell* liability; (2) that an unnamed "Chief Policymaker" undertook "at least one act" that would establish *Monell* liability; and (3) that unnamed "Chief Policymakers" from the City were aware of Kantrud's alleged misuse of the criminal-justice system to gain an advantage in *Gearin I.* Compl. ¶ 47.

The first basis for *Monell* liability can be easily disposed of. Gearin has not cited any authority suggesting that it is unlawful for an attorney representing a client in a criminal action to work closely with an attorney representing the same client in a related civil action. Such cooperation is common; indeed, it is common for the same attorney to represent a client in related criminal and civil actions, and, when that occurs, the single attorney obviously cannot help but cooperate with himself. Moreover, an attorney representing a client in a criminal action would likely commit malpractice — and breach his ethical obligations — if he did *not* work closely with an attorney representing the same client in a related civil action to ensure that the client's interests are fully protected. Consequently, the City is not liable under *Monell* because it did not have a policy prohibiting Kantrud from cooperating with the attorneys representing the City in *Gearin I.*

The Court likewise agrees with defendants that Gearin's allegation about an unidentified act by an unidentified "Chief Policymaker" is insufficient to state a claim for *Monell* liability. The Court recognizes that the Supreme Court has specifically rejected any heightened pleading standard for *Monell* claims. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coord. Unit*, 507 U.S. 163, 168 (1993). But even in *Leatherman*, the plaintiffs alleged inadequate training as a basis for liability. *Id.* at 165. Here, Gearin's allegation — that an unnamed policymaker did some unspecified thing — is so generic as to be meaningless.

The Court notes that this allegation seems to be inspired by *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), in which the Supreme Court explained that *Monell* liability may be predicated on a single act if the act is undertaken by a municipal official "'whose acts or edicts may fairly be said to represent official policy,' and whose decisions therefore may give rise to municipal liability under § 1983." *Id.* at 480 (citation omitted) (quoting *Monell*, 436 U.S. at 694). At oral argument, Gearin suggested that Kantrud himself might be the chief policymaker whose actions give rise to *Monell* liability. But the Eighth Circuit has held that, when a plaintiff attempts to pin *Pembaur*-type liability on a municipality by arguing that the *prosecutor* is a policymaker, the prosecutor's immunity also shields the municipality. *Patterson v. Von Riesen*, 999 F.2d 1235, 1238 n.2 (8th Cir. 1993) ("Because of the prosecutors' absolute immunity, Patterson cannot attach liability to the decision in question, and, thus, even if the policy was county policy, Patterson still may not recover damages.").[8]

But with respect to Gearin's allegation that unnamed "Chief Policymakers" from the City were aware of Kantrud's alleged misuse of the criminal-justice system to gain an advantage in *Gearin I*, the Court finds that Gearin has (barely) stated a claim against the City. A municipality may be liable for its employees' unconstitutional acts when the city's "inaction reflects a deliberate indifference to the constitutional rights of the citizenry, such that inadequate

---

[8]*Patterson* contains a broad statement that could be read to mean that a prosecutor's absolute immunity always extends to the municipality. *See Patterson*, 999 F.2d at 1238 ("Because Patterson may not hold the prosecutors liable, he may not hold the county liable."). But there is no suggestion in *Patterson* that there was any basis for municipal liability other than the claim that the prosecutors' own acts were those of policymakers. In light of this fact, and the weight of authority (including *VanHorn* from the Eighth Circuit) indicating that absolute immunity does not extend to municipalities, the Court reads *Patterson* to hold only that a plaintiff cannot state a *Monell* claim by alleging that a prosecutor was acting as a policymaker when performing functions protected by absolute prosecutorial immunity.

training or supervision actually represents the city's 'policy.'" *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 392 (8th Cir. 2007) (en banc). By alleging that the City's chief policymakers had actual knowledge of Kantrud's alleged misuse of the criminal justice system, Gearin has alleged such deliberate indifference. *See Sims v. Lay*, 216 Fed. App'x. 599, 600 (8th Cir. 2007) (per curiam) ("We conclude, however, that Sims stated a deliberate-indifference claim against Warden Gaylon Lay as a policy maker. Sims alleged that — through his grievances — Warden Lay knew of the Cummins Unit's constitutionally inadequate housing and staffing for mental health inmates yet failed to correct the situation.").

Of course, a "Chief Policymaker's" knowledge of a single instance of unconstitutional conduct is not ordinarily enough to establish deliberate indifference on the part of a municipality. *See Szabla*, 486 F.3d at 392-93. But here, Gearin alleges the existence of a criminal prosecution that lasted for over a year. *Cf. Doe ex rel. Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 615 (8th Cir. 2003) (holding that plaintiffs' claims were properly dismissed and distinguishing a case in which "the teacher continued to pray, with the knowledge of the superintendent and the school board, for several months . . . whereas in this situation, only a single religious recitation occurred"); *see also Kohl v. Casson*, 5 F.3d 1141, 1148 (8th Cir. 1993) (recognizing that, in *Leatherman*, "[t]he Supreme Court held that requiring a plaintiff to allege particular instances of similar constitutional violations in order to defeat a motion to dismiss for failure to state a claim is inconsistent" with the Federal Rules of Civil Procedure). At this stage in the case, the Court cannot say that Gearin will be unable to establish deliberate indifference on the City's part to a long-running, allegedly retaliatory criminal prosecution.

Gearin has not identified the policymakers in question nor alleged any facts to support her allegation that these unnamed policymakers knew of Kantrud's actions or knew of his allegedly improper motives. In this Court's view, Gearin's allegations fall far short of the pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). But, as noted earlier, *Leatherman* rejected any heightened pleading requirement for *Monell* claims, and it was apparently sufficient for the *Leatherman* plaintiff merely to allege inadequate training — without specifying what was inadequate about the training or who was responsible for those inadequacies. *Leatherman*, 507 U.S. at 165, 168 (reversing dismissal of complaint where the "stated basis for municipal liability under *Monell*" was "the failure of [the municipalities] to adequately train the police officers involved").

Although it is difficult for this Court to understand how this aspect of *Leatherman* could survive *Twombly* and *Iqbal*, the Supreme Court cited *Leatherman* in *Twombly* and specifically disavowed any intent to create a heightened pleading standard under Rule 8. *See Twombly*, 550 U.S. at 569 n.14; *see also Baribeau v. City of Minneapolis*, No. 06-4953, 2007 WL 2123307, at *2 n.5 (D. Minn. July 20, 2007) (noting that, in *Twombly*, "the Supreme Court did not retreat from its holdings in *Leatherman*").[9] In light of that fact, this Court cannot hold that *Leatherman* was overruled sub silentio by *Twombly* and *Iqbal*. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling

---

[9]The Eighth Circuit reversed in part the district court's subsequent decision granting summary judgment in *Baribeau*. *See Baribeau v. City of Minneapolis*, 596 F.3d 465 (8th Cir. 2010).

its own decisions."). The Court therefore denies defendants' motions to the extent they seek judgment on Gearin's *Monell* claims against the City.

### 4. State-Law Claims Against the City

Although the City does not enjoy the benefit of Kantrud's immunity from liability on Gearin's *federal* claims, that is not true with respect to Gearin's *state* claims. Minnesota courts have held that "[t]he policy considerations that support extending absolute immunity to prosecutors also support extending absolute immunity vicariously to the county." *S.J.S. by L.S. v. Faribault Cnty.*, 556 N.W.2d 563, 566 (Minn. Ct. App. 1996). The City, like Kantrud, is absolutely immune from liability for Gearin's state-law claims. The Court therefore grants the City's motion for judgment on the pleadings with respect to Gearin's state-law claims.

### C. Remaining Arguments

For the reasons described above, the Court will dismiss all of Gearin's federal and state claims against Kantrud, with the exception of her federal claims based on Kantrud's actions in applying for the February 15 search warrant. The Court will also dismiss all of Gearin's state claims against the City. Thus, Gearin's remaining claims include her First and Fourth Amendment claims against the City, the police officers, and Fisher.

Defendants raise several arguments on the merits of Gearin's First Amendment claims.[10] As a general matter, by alleging that defendants initiated and pursued a baseless criminal action

---

[10]Defendants also argue that, to the extent that Fisher and the City obtain summary judgment on Gearin's First and Fourth Amendment claims in *Gearin I*, those same claims should be dismissed in this case. As discussed more fully in the Court's January 28, 2011 opinion in *Gearin I*, Gearin's Fourth Amendment claims in this case do not overlap with her Fourth Amendment claims in that case. As for Gearin's First Amendment claims, the Court granted summary judgment to Fisher and the City on only one aspect of those claims in *Gearin I*, and it does not appear that Gearin is making a similar claim in this case.

against her, arrested her without probable cause, and searched her building without probable cause — and that defendants took these actions to retaliate against her for exercising rights protected by the First Amendment — Gearin has adequately pleaded First Amendment retaliation claims.[11] *See Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007) ("A citizen's right to exercise the constitutional freedoms to speak and to seek judicial relief without facing retaliation from government officials is clearly established."); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986) ("state officials may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future"). Defendants' arguments on the merits are best left for resolution after discovery and development of the factual record. But because the scope of Gearin's First Amendment claims is fairly broad, the Court will address a couple of defendants' arguments in order to dispense with some of the legally untenable aspects of those claims.

First, Gearin complains that Kantrud and the City continued to prosecute her for "certificate of occupancy" violations even after the statutory basis for such prosecutions — Minn. Stat. § 16B.69 — was repealed effective May 20, 2008. But the City never lacked a statutory basis for prosecuting "certificate of occupancy" violations. Under Minn. Stat. § 326B.082, which was adopted in 2007, *see* 2007 Minn. Laws Ch. 140 Art. 3 § 2, "a person who violates an applicable law is guilty of a misdemeanor." Minn. Stat. § 326B.082, subd. 16. "[A]pplicable law" is defined to include, among other things, all of Chapter 326B of the

---

[11]Defendants have not argued that there was probable cause to prosecute Gearin or moved to dismiss on the basis that Gearin has failed to plead lack of probable cause. *See Hartman v. Moore*, 547 U.S. 250, 252 (2006).

-20-

Minnesota Statutes, as well as "all rules, orders, stipulation agreements, settlements, compliance agreements, licenses, registrations, certificates, and permits adopted, issued, or enforced by the department under sections 327.31 to 327.36 or [Chapter 326B]."[12] Minn. Stat. § 326B.081, subd. 3. The state building code, including the section governing certificates of occupancy (Minn. R. 1300.0220), was adopted by the Department of Labor and Industry pursuant to Chapter 326B. *See* Minn. Stat. § 326B.106, subd. 1 (requiring the commissioner of the Department of Labor and Industry to adopt a building code); Minn. R. 1300.0050 (listing provisions of the state building code adopted under Minn. Stat. § 326B.106, subd. 1). Thus, a violation of the state building code, as a violation of "applicable law" under § 326B.082, is a misdemeanor.

Second, much of Gearin's complaint is premised on the notion that there is something wrong about an attorney who represents a client in a criminal proceeding cooperating with an attorney who represents the same client in a related civil proceeding. As the Court has already explained, Gearin's argument is supported by neither law nor logic. Thus, any claim by Gearin that the City can be held liable merely because Kantrud worked closely with the attorneys representing the City in *Gearin I* is untenable.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

---

[12] "[D]epartment" means the Department of Labor and Industry. *See* Minn. Stat. § 326B.01, subd. 4.

1.      The motion of defendants Kevin Rabbett, Steve Heinz, Richard Doblar, David Fisher, and the City of Maplewood for partial judgment on the pleadings [Docket No. 20] is GRANTED IN PART and DENIED IN PART.

2.      The motion of defendant Alan Kantrud for judgment on the pleadings [Docket No. 15] is GRANTED IN PART and DENIED IN PART.

3.      Defendants' motions are GRANTED with respect to the following claims:

   a.      All of plaintiff's claims against Kantrud, with the exception of plaintiff's claim that Kantrud is liable under 42 U.S.C. § 1983 for his actions in applying for the February 15, 2008 search warrant; and

   b.      Plaintiff's state-law claims against the City of Maplewood.

4.      All of the dismissed claims are DISMISSED WITH PREJUDICE AND ON THE MERITS, with the exception of plaintiff's claim for arrest without probable cause against Kantrud, which is DISMISSED WITHOUT PREJUDICE.

5.      Defendants' motions are DENIED in all other respects.

Dated: January 28, 2011                    s/Patrick J. Schiltz
                                           Patrick J. Schiltz
                                           United States District Judge